# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**SEAN GOTTLIEB**,

    Plaintiff,

    v.

**ADTALEM GLOBAL EDUCATION**,

    Defendant.

Case No. 1:25-cv-7752

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS AND TO STAY BRIEFING ON MOTION TO DISMISS

Kelly Eberspecher (IL # 6255878)
**STEPTOE LLP**
227 West Monroe Street, Suite 4700
Chicago, IL 60606
(312) 577-1300
keberspecher@steptoe.com

Molly Bruder Fox (*pro hac vice*)
B. Gammon Fain (*pro hac vice*)
**STEPTOE LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
mbfox@steptoe.com
gfain@steptoe.com

*Counsel for Defendant*
*Adtalem Global Education, Inc.*

## TABLE OF CONTENTS

I.      **INTRODUCTION**................................................................................................**1**

II.     **FACTUAL AND PROCEDURAL BACKGROUND** .......................................**1**

     A.     Plaintiff's Falsified Hawaii Letter ...............................................................2

     B.     Plaintiff's Vexatious Litigation Conduct ...................................................4

III.    **ARGUMENT** .................................................................................................**8**

     A.     The falsified Hawaii letter is sanctionable fraud on the court. ...............9

     B.     Plaintiff's litigation misconduct is also sanctionable.............................10

     C.     The Court's inherent powers are applicable because Rule 11 is insufficient to address these wrongs...................................................................12

     D.     Terminating sanctions and an award of attorneys' fees and costs are appropriate to deter future misconduct and punish Plaintiff. .......................................13

     E.     Briefing deadlines should be stayed pending the resolution of this issue. ............15

IV.    **CONCLUSION** ...........................................................................................**15**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. City of Evansville*,
120 F.3d 723, 728 (7th Cir. 1997) ........................................................................... 7

*Ayoubi v. Dart*,
640 F. App'x 524 (7th Cir. 2016) ........................................................................... 14

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991).................................................................................... passim

*Claiborne v. Puritan Home Funding, L.P.*,
414 F.3d 715 (7th Cir. 2005) ................................................................................ 12

*Fidelity Nat. Title Ins. Co. of N.Y. v. Intercounty Nat. Title Ins. Co.*,
No. 00-cv-5658, 2002 WL 1433584, (N.D. Ill. July 2, 2002) .................................... 7

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017)............................................................................................ 15

*Greyer v. Ill. Dep't of Corr.*,
933 F.3d 871 (7th Cir. 2019) ............................................................................. 9, 10

*In re Golf 255, Inc.*,
652 F.3d 806 (7th Cir. 2011) ................................................................................. 9

*In re Morris Senior Living, LLC*,
526 B.R. 750 (N.D. Ill. 2014) ................................................................................. 9

*Laiden v. Astrachan*,
128 F.3d 1051 (7th Cir. 1997). ............................................................................. 11

*Lamboy-Ortiz v. Ortiz-Velez*,
630 F.3d 228 (1st Cir. 2010)................................................................................. 13

*Lee v. Raby Inst. for Integrative Medicine at Northwestern, LLC*,
No. 20-cv-7254, 2023 WL 11903569 (N.D. Ill. May 12, 2023)................................ 11

*Methode Elecs., Inc. v. Adam Techs., Inc.*,
371 F.3d 923 (7th Cir. 2004) ................................................................................ 10

*Phelps v. Neal*,
    No. 3:23-cv-920, 2025 WL 472258 (N.D. Ind. Feb. 12, 2025) ................................... 9

*Ramirez v. T & H Lemont, Inc.*,
    845 F.3d 772 (7th Cir. 2016) ..................................................................................... 14

*REXA, Inc. v. Chester*,
    42 F.4th 652 (7th Cir. 2022) ...................................................................................... 15

*Sanders v. Melvin*,
    25 F.4th 475 (7th Cir. 2022) ........................................................................... 9, 12, 14

*Thompson v. Safeway, Inc.*,
    No. 01-cv-3260, 2002 WL 500547, (N.D. Ill. Apr. 2, 2002) ...................................... 7

*United States v. Rogers Cartage Co.*,
    794 F.3d 854 (7th Cir. 2015) ..................................................................................... 12

*Universal Oil Products Co. v. Root Ref'g Co.*,
    328 U.S. 575 (1946) ................................................................................................... 12

*Whitmore v. Kroger Limited P'ship I*,
    779 F. Supp. 3d 757 (E.D. Va. 2024) ................................................................. 13, 15

*Xped, LLC v. Entities Listed on Exhibit 1*,
    690 F. Supp. 3d 831 (N.D. Ill. 2023) (Jenkins, J.) ........................................... passim

**Rules**

Fed. R. Civ. P. 11(b) ........................................................................................................ 13

**Other Authorities**

"Vexatious," Black's Law Dictionary (9th ed. 2009) ...................................................... 2

## I.      INTRODUCTION

On November 20, 2025, Plaintiff falsified a government document, filed it in this Court, and then twice knowingly misrepresented its authenticity.  (ECF Nos. 84, 84-1, and 85). Defendant Adtalem Global Education, Inc. ("Adtalem") accordingly moves for terminating sanctions and an award of attorneys' fees and costs pursuant to the Court's inherent powers to sanction litigants, and for a stay of pending deadlines until this Motion is resolved.  As otherwise detailed herein and in Adtalem's prior filings, Plaintiff is a vexatious litigant who has demonstrated an intentional disregard for candor and decorum, who seeks to abuse judicial (and extrajudicial) processes, and who has now committed fraud on the court.  For these reasons, Adtalem respectfully asks the Court to hold Plaintiff to account for his actions and prevent further abuse of process by the imposition of sanctions.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's creation and filing of a falsified government document is only the latest occurrence in a pattern of misconduct that evidences the improper purpose for which Plaintiff filed this lawsuit: to extract a settlement of his false claims by harassment, intimidation, and abuse of process.   Indeed, the docket in this action alone – still at the pleading stage – holds more than 50 filings attributed to Plaintiff, most of which are immaterial, repetitive, and frivolous.

Beyond the docket, Plaintiff has also engaged in a campaign of harassment and intimidation against Adtalem and its counsel by falsely reporting criminal misconduct, filing baseless bar complaints, submitting so-called whistleblower complaints unrelated to Plaintiff's employment claims, and even seeking to directly contact Adtalem.  Through all his harassing communications with Adtalem's counsel, Plaintiff has consistently sought to extract a settlement by threatening further abuses of process and resulting increases in the costs of litigation unless

his demands were met. Adtalem has resisted at every point. Plaintiff has been a vexatious litigant since the start of this lawsuit, but more recently, his vexatiousness has evolved to blatant fraud on the Court.[1]

### A.      Plaintiff's Falsified Hawaii Letter

On November 17, Adtalem moved to dismiss Count III of Plaintiff's Fourth Amended Complaint, which alleged purported violations of Hawaii anti-discrimination laws, because, among other defects, Plaintiff failed to allege that he received a right-to-sue letter from the Hawaii Civil Rights Commission ("HCRC"). (ECF No. 79 at 4–6). The next day, Plaintiff filed an opposition brief and stated that he "has in fact been in communication with HCRC, and has been assured that a right to sue letter will be issued[.]" (ECF No. 82 at 4). Two days later, on November 20, Plaintiff provided that purported HCRC right-to-sue letter, writing in a motion for leave to file that he "received an official letter" on November 20 that confirmed he "has exhausted all administrative remedies with the HCRC." (ECF No. 84 at 1). Plaintiff further stated that "[a] true and correct copy of the letter" was attached thereto. (*Id.*).

But the letter attached thereto is neither true nor correct. To the contrary, it is falsified and forged. The letter, bearing HCRC letterhead and the purported signature of HCRC's Deputy Executive Director, "serves to verify" that Plaintiff has exhausted his administrative remedies with the HCRC, but it contains multiple anomalies – including mismatched typefaces, typographical errors, and an out-of-place ending of "call me to discuss[.]" (ECF No. 84-1). The letter also contains none of the boilerplate language usually seen in right-to-sue letters. (*See id.*).

---

[1] Plaintiff has taken noted issue with Adtalem's usage of the term "vexatious" to describe his litigation conduct, but Plaintiff is undoubtedly vexatious. Black's Law Dictionary defines "vexatious" as "without reasonable or probable cause or excuse; harassing; annoying." (9th ed. 2009). Indeed, Plaintiff has raised his issues with the descriptor as vexatiously as possible by filing multiple individual bar complaints against the attorneys representing Adtalem, and by sending a Rule 11 letter to Adtalem based in part on its usage of the term, in addition to his repeated communications to counsel. *See infra* part II.B.

Tellingly, the letter's PDF metadata reveals that the document's author is "Chocolateboywonder," a username attributed to Plaintiff, which can be seen in the same author metadata field of documents authored by Plaintiff, and an embedded document title of "The Original Online PDF Editor – PDFescape." (Declaration of B. Gammon Fain ("Fain Decl.") at ¶¶ 6–9, Exs. 1–3). "PDFescape" describes itself as a "free, online PDF reader, editor, form filler & form designer" on its website. (*Id*. ¶ 9, Ex. 4). The site can be used to edit text in PDF documents, such as, for instance, a PDF right-to-sue letter located elsewhere online. (*See id*.).

Having noticed these anomalies in Plaintiff's letter, defense counsel contacted Heather McVay, whose purported signature is on the letter as the HCRC Deputy Executive Director, to inquire about the letter's authenticity. (*Id*. ¶ 10). Ms. McVay and defense counsel spoke by telephone on November 21 and corresponded by email on the same day. (*Id*. ¶¶ 10–12, Ex. 5). On November 25, Ms. McVay confirmed that the letter "was neither created by nor sent by [her] office" at the HCRC. (*Id*. ¶ 14, Ex. 6). The HCRC letter has resultingly been proven as falsified and forged by Plaintiff, who has also twice knowingly misrepresented the letter's authenticity. Plaintiff first did so in his motion for leave to file on November 20, when he wrote that it was a "true and correct copy" of an "official letter[.]" (ECF No. 84 at 1–2). Plaintiff then falsely reiterated the falsified letter's authenticity in his refiled Opposition to Adtalem's Motion to Dismiss on November 25: "Plaintiff has now received a formal Right-to-Sue letter from the Hawai'i Civil Rights Commission ("HCRC") dated November 20, 2025." (ECF No. 86 at 3).

Plaintiff's dishonesty in falsifying a government document and repeatedly misrepresenting its authenticity is brazen and repugnant. But as detailed below, Plaintiff's recent fraud on the Court is only the latest occurrence in a pattern of abusive and harassing litigation misconduct.

### B.      Plaintiff's Vexatious Litigation Conduct

Since filing this action, Plaintiff has waged a campaign of harassment against Adtalem and its counsel to extract a settlement from the company by vexatious litigation conduct – with Plaintiff threatening further abuses of process and increased costs to Adtalem at every turn and by multiple means.

First, Plaintiff has sought to inhibit defense counsel's ability to litigate against him by repeatedly lodging baseless allegations of professional misconduct and even criminal misconduct against defense counsel.  These allegations constitute repeated abuses of processes belonging to bar associations, courts, and government agencies across multiple jurisdictions.  Evidencing their impropriety, Plaintiff's allegations against defense counsel are wholly unrelated to Plaintiff's substantive claims against Adtalem and instead relate to defense counsel's ordinary litigation conduct.  As a result of these claims and allegations, defense counsel has been forced to engage with Plaintiff and with regulating entities through its own counsel, all while also litigating against Plaintiff on the merits in this Court.  Indeed, since filing this action, Plaintiff has made at least five baseless complaints of professional misconduct against individual members of the defense team, each stemming from defense counsel's ordinary and ethical litigation conduct, such as verbiage used and legal arguments made in briefs:

(1)      *September 10, 2025*: Plaintiff filed a complaint with the Illinois Attorney Registration and Disciplinary Commission ("ARDC") against Cara Lawson, alleging ethical violations based on "**the repeated use of loaded terms**" in Adtalem's motion, such as "**harass**," "**frivolous**," "**fabricated**," and "**deliberate disregard for candor**."  (Fain Decl. ¶ 19, Ex. 7 at 5) (emphasis added).

(2)      *September 24, 2025*:  Plaintiff emailed a second complaint to the ARDC alleging "**unethical and illegal behaviour** [*sic*]" by Ms. Lawson because Adtalem referred to him as "**vexatious**" in a brief.  (*Id.* ¶ 20, Ex. 8 at 1) (emphasis added).

(3)     *October 15, 2025*:     Plaintiff made a complaint to the Office of Disciplinary Counsel of the District of Columbia Bar against Ms. Fox and Ms. Lawson for making "**a false jurisdictional representation that 'Plaintiff has not proven Hawaii law is appliable**'" in a brief.  (*Id.* ¶ 22, Ex. 10 at 8) (emphasis added).

(4)     *October 16, 2025*:     Plaintiff submitted an attorney misconduct complaint to the U.S. Court of Appeals for the Seventh Circuit against Ms. Lawson, Molly Bruder Fox, and "any Steptoe LLP partners or managers who reviewed or approved filings in this case" based on Adtalem's statement in a brief that "**Plaintiff has not proven that Hawaii law is applicable**."  (*Id.* ¶ 21, Ex. 9 at 2–3) (emphasis added).

(5)     *November 21, 2025*:  Plaintiff submitted a third complaint to the Illinois ARDC against Ms. Fox, Ms. Lawson, Gammon Fain, and Kelly Eberspecher alleging "**material misrepresentations of fact and controlling law to the federal court**" and "**launching personal attacks through the unfounded 'vexatious litigant' label**[.]"  (*Id.* ¶ 23, Ex. 11 at 7) (emphasis added).

None of these complaints have resulted in an investigation or any finding of misconduct by a bar association or court because none of these complaints allege actionable misconduct.  (*Id.* ¶ 24).  They instead air grievances with ordinary litigation conduct and seek to chill defense counsel's advocacy for Adtalem.  Indeed, in his most recent email on November 21 attaching his fifth bar complaint, Plaintiff noted that "[a]ny future references to the plaintiff being vexatious in future filings will result in additional bar complaints/court notification."  (*Id.* ¶ 23, Ex. 11 at 1).  Plaintiff's intent to intimidate defense counsel by bar complaints is thus clear.

In addition to bar complaints for violations of professional ethics rules, Plaintiff has also bizarrely alleged that defense counsel should be held criminally responsible for their ordinary litigation conduct.  On October 15, Plaintiff submitted a so-called "Criminal Referral Report" to the Department of Justice and the FBI by email, alleging "deliberate false statements and concealment of material facts made by Steptoe LLP" and requesting a federal criminal investigation into the firm and its attorneys.  (*Id.* ¶ 25, Ex. 12 at 1–2).  Further to that false

report, Plaintiff requested that one of the defense attorneys recuse herself from the matter as a "material witness" due to a purported "personal interest in avoiding disciplinary or criminal exposure[.]" (*Id.* ¶ 22, Ex. 10 at 2). None of Plaintiff's criminal allegations against defense counsel have been acted upon by any law enforcement agency. (*Id.* ¶ 26). Like his baseless bar complaints, Plaintiff's intent to intimidate defense counsel by false allegations of criminal misconduct is readily apparent.

Plaintiff has similarly made false criminal allegations against Adtalem and its employees. On November 15, Plaintiff emailed various federal government agencies "to report criminal activity by the board members and executives at Adtalem" concerning purported violations of federal securities law. (*Id.* ¶ 27, Ex. 13 at 1–2). Plaintiff has also filed multiple regulatory complaints against Adtalem with the SEC and the Department of Education. (*Id.* ¶¶ 28–29, Exs. 14 and 15). Plaintiff has also contacted Glass Lewis to ask for an investigation of Adtalem's securities filings. (*Id.* ¶ 30, Ex. 16). To the extent any of these allegations relate to the substantive discrimination claims Plaintiff has made against Adtalem in this Court, the relation is tangential at best, and in most instances, there exists no relation at all. Plaintiff here again obviously seeks to intimidate Adtalem by false criminal and regulatory reports.

Plaintiff made all these intimidation efforts to coerce Adtalem into settlement. At the same time Plaintiff was filing baseless bar complaints, criminal reports, regulatory complaints, and securities claims against Adtalem and its counsel, Plaintiff threatened these actions against Adtalem and its counsel and warned that they would increase the costs of litigation unless Adtalem settled the case. Adtalem informed Plaintiff upon his first settlement demand in September that it was not interested in settlement. (*Id.* ¶ 31, Ex. 17). But despite that

information, Plaintiff continued to demand a settlement while threatening increased costs, more

harassment, and more abuses of process – clearly evidencing his intent to coerce a settlement:

(1)     *September 13, 2025*:  Plaintiff demanded $30,000 to settle, noting that "**the decision not to settle will cost Adtalem a lot of money**" and threatening a complaint to the Department of Education's Office for Civil Rights ("OCR").  (*Id*. ¶ 32, Ex. 18 at 3) (emphasis added).[2]

(2)     *September 14, 2025*:  Plaintiff followed up with a message stating that he was "withholding taking action with OCR until" he heard back from Adtalem on his settlement demand.  (*Id*. ¶ 33, Ex. 19).

(3)     *September 14-16, 2025*:  Plaintiff sent the same settlement demand and threat to multiple Adtalem executives and board members, while adding new threats of securities whistleblower claims and warning of additional costs of litigation.  (*Id*. ¶¶ 34–35, Exs. 20–21).

(4)     *September 24, 2025*:  Plaintiff sent a second demand for $30,000, threatening further litigation in Hawaii: "**The operative message if that your client WILL face those claims.  Are you sure you want them to be filed in Hawaii state court?**" and an increased demand of $50,000 if Adtalem's motion to dismiss were denied "**consistent with the progression of litigation and additional claim exposure.**"  (*Id*. ¶ 36, Ex. 22 at 1–2).  Plaintiff also remarked on the possible expenses of litigation and asked,"**Then again, I guess your firm doesn't make money by settling now does it** ? [*sic*]" (*Id*., Ex. 22 at 2) (capitalization in original, emphasis added).

(5)     *October 1, 2025*:  Plaintiff reiterated the same demand, again threatening further costs of litigation: "**One more month or two of litigation is going to cost your client FAR MORE than $30,000. Discovery is going to cost 10 times that.**"  (*Id*. ¶ 37, Ex. 23 at 1) (capitalization in original, emphasis added).

(6)     *October 10, 2025*:  Plaintiff threatened another lawsuit in Hawaii but remarked that "**Settlement avoids this**."  (*Id*. ¶ 38, Ex. 24 at 4) (emphasis added).

---

[2] While settlement communications are not admissible at trial under FRE 408 to prove or disprove a disputed claim or to impeach by contradiction, such communications are discoverable and can be considered in pretrial motion practice for other purposes – such as to show an improper purpose for litigation.  *See, e.g.*, *Fidelity Nat. Title Ins. Co. of N.Y. v. Intercounty Nat. Title Ins. Co.*, No. 00-cv-5658, 2002 WL 1433584, at \*4 (N.D. Ill. July 2, 2002) (citing *Alexander v. City of Evansville*, 120 F.3d 723, 728 (7th Cir. 1997); *cf. Thompson v. Safeway, Inc.*, No. 01-cv-3260, 2002 WL 500547, at \*2 (N.D. Ill. Apr. 2, 2002).

Moreover, as detailed in Adtalem's prior filings, Plaintiff has repeatedly misrepresented the law through his apparent usage of generative AI. (*E.g.*, ECF Nos. 79 at 7 n.1, and 34 at 8–11). Plaintiff recently attempted to allege that defense counsel has also fabricated case law, but his allegations are nonsensical and are in fact illustrative of his own wrongdoing. In an email dated November 20, Plaintiff threatened further disciplinary complaints against defense counsel based on supposed fabrications, but in that email, Plaintiff himself still misrepresented case law. As one example, while attempting to argue that defense counsel misstated *Shoppe v. Gucci America, Inc.*, Plaintiff quoted two excerpts that do not exist in the case's text. (*See* Fain Decl. ¶ 23, Ex. 11 at 1–2). Below the false quotes from *Shoppe*, Plaintiff inserted his own commentary: "(THIS IS THE CASE YOU DECIDED TO USE ? A CASE THAT ACTUALLY SUPPORTS MY THEORY ? WOW !! ) [sic]" (*Id*. at 2) (emphasis and spacing in original). The stark difference in Plaintiff's own commentary and the AI-generated commentary is clear.

In sum, Plaintiff's litigation conduct is vexatious and is unbecoming of the Court, as he has sought to harass Adtalem and its counsel to extract a settlement from the company. Adtalem has already incurred more than $70,000 in fees and costs defending itself against Plaintiff's campaign of harassment and abuse of process. (Fain Decl. ¶ 39). As evidenced by Plaintiff's communications and conduct, Plaintiff has intentionally caused Adtalem to incur these costs by his vexatious litigation conduct, including most recently, his fraud on the court.

## III.    ARGUMENT

Plaintiff has committed fraud on the court by falsifying a government document, filing it in this Court in furtherance of a legal argument, and then repeatedly misrepresenting the same document's authenticity. By his vexatious litigation conduct, Plaintiff has also engaged in sanctionable misconduct, as evidenced by the pattern of harassment by Plaintiff against Adtalem

and its counsel and Plaintiff's repeated threats of further abuses of process. Rule 11 is insufficient to address these wrongs, which arise from egregious fraud on the court and Plaintiff's out-of-court litigation conduct beyond paper filings. The Court should accordingly issue sanctions pursuant to its inherent powers, dismiss the lawsuit with prejudice, and award Adtalem its attorneys' fees and costs incurred as a result of Plaintiff's misconduct.

## A.     The falsified Hawaii letter is sanctionable fraud on the court.

Plaintiff's falsification of a government document is sanctionable fraud on the court, which "consists of acts that defile the court." *In re Morris Senior Living, LLC*, 526 B.R. 750, 759 (N.D. Ill. 2014) (quoting *In re Golf 255, Inc.*, 652 F.3d 806, 809 (7th Cir. 2011)). Examples of fraud on the court include "[c]reating and submitting impermissibly altered, forged, falsified, or deceitful documents . . . which abuses the judicial process and which may be sanctionable." *Phelps v. Neal*, No. 3:23-cv-920, 2025 WL 472258, at *2 (N.D. Ind. Feb. 12, 2025) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)); *see also Xped, LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 850 (N.D. Ill. 2023) (Jenkins, J.). Fraud on the court generally occurs when a litigant lies to obtain a benefit from the Court that the litigant would not have in the absence of the lie at issue. *See Sanders v. Melvin*, 25 F.4th 475, 482 (7th Cir. 2022) (citing *Greyer v. Ill. Dep't of Corr.*, 933 F.3d 871, 879–90 (7th Cir. 2019)). Fraud on the court is sanctionable when it involves intentional and material misrepresentations or omissions. *Xped, LLC*, 690 F. Supp. 3d at 850 (citing *Greyer*, 933 F.3d at 877–78).

Here, fraud on the court is apparent in Plaintiff's falsification and filing of a government document (a right-to-sue letter) to obtain the benefit of curing the legal defects in his Hawaii state law discrimination claims. The fraud was intentional because Plaintiff himself falsified the letter, as evidenced by the document metadata and the HCRC's confirmation that the letter was

forged. (Fain Decl. ¶¶ 8, 10–15). The fraud was furthermore material because it spoke to an element of one of Plaintiff's causes of action, and if successfully perpetrated, the fraud was designed to result in Adtalem's Motion to Dismiss being denied. *Cf. Xped, LLC*, 690 F. Supp. 3d at 858 (citing *Greyer*, 933 F.3d at 877–78).

The falsification of a right-to-sue letter, an official government document, and the forgery of a government official's signature are acts so brazen that Adtalem is unaware of any published case in which an employment discrimination plaintiff has attempted to do the same. This Court has previously sanctioned litigants by dismissal with prejudice pursuant to its inherent powers for filing a fraudulent certificate of service. *See id*. Plaintiff's actions here are far more egregious, as he falsified a government document and forged a government official's signature. Plaintiff also twice knowingly misrepresented the letter's authenticity in filings, referring to the forgery as an "official letter" (ECF No. 84 at 1) and a "formal Right-to-Sue letter" from the HCRC. (ECF No. 86 at 3). A more serious fraud on the court is difficult to conceptualize.

### B. Plaintiff's litigation misconduct is also sanctionable.

In addition to committing fraud on the court, Plaintiff has engaged in sanctionable litigation misconduct because he has repeatedly sought to abuse judicial and extrajudicial processes for purposes of coercing Adtalem and its counsel into settlement. Litigation misconduct is sanctionable when a party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons[.]" *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 928 (7th Cir. 2004) (quoting *Chambers*, 501 U.S. at 45). More specifically, "[t]hreatening to bring criminal charges or litigation against an opposing party if they refuse to meet settlement demands is sanctionable misconduct." *Lee v. Raby Inst. for Integrative Medicine at Northwestern, LLC*, No.

20-cv-7254, 2023 WL 11903569, at *3 (N.D. Ill. May 12, 2023) (citing *Laiden v. Astrachan*, 128 F.3d 1051, 1058 (7th Cir. 1997)).

Plaintiff here has done exactly that – the facts stated above detail repeated instances of Plaintiff threatening to bring criminal charges, bar complaints, regulatory actions, and additional litigation alongside his demands for settlement and for changes in defense counsel's litigation conduct. Plaintiff himself stated his threat succinctly on October 11, with respect to further litigation in Hawaii: "Settlement avoids this." (Fain Decl. ¶ 38, Ex. 24 at 4). The correspondence attached to the Fain Declaration is otherwise replete with instances in which Plaintiff used threats of further litigation and abuses of process to attempt to coerce a settlement or a change in litigation conduct. (*See generally id*.).

But in addition to his threats to take those actions, unlike the plaintiff in *Raby*, this Plaintiff actually took them – even further underscoring the sanctionable nature of Plaintiff's misconduct. As detailed above, after Adtalem declined to settle and refused to abide by Plaintiff's demands, Plaintiff made at least five bar complaints against defense counsel in Illinois and the District of Columbia, asked the Department of Justice to investigate defense counsel for criminal activity, made multiple securities whistleblower complaints to the SEC, filed regulatory complaints with multiple federal agencies, and attempted to incite an investigation by a securities proxy firm. All these actions were taken in bad faith, as they are baseless and wholly unrelated to the employment discrimination claims that underlie Plaintiff's complaint in this Court, and because they were taken for the purpose of harassing and coercing Adtalem and its counsel.

In all, Plaintiff's out-of-court conduct evidences a clear pattern of harassment, threats, and abuses of process with the stated intention of extracting a settlement from Adtalem. Plaintiff has furthermore engaged in personal attacks against defense counsel by filing baseless attorney

misconduct complaints for ordinary litigation conduct. The law is clear that such conduct is sanctionable and improper, and sanctions should accordingly issue.

### C. The Court's inherent powers are applicable because Rule 11 is insufficient to address these wrongs.

This Motion is brought pursuant to the Court's inherent powers, instead of Rule 11, because Rule 11 is insufficient to address Plaintiff's fraud on the court and his litigation misconduct. Federal district courts have inherent powers to sanction litigants and attorneys independent of the Federal Rules of Civil Procedure. *Sanders*, 25 F. 4th at 481. But when exercising its inherent powers to sanction litigants beyond Rule 11, the Court must only do so "when sanctions under the Rules would be inadequate." *Xped, LLC*, 690 F. Supp. 3d at 847 (citing *United States v. Rogers Cartage Co.*, 794 F.3d 854, 863 (7th Cir. 2015)). Rule 11 is inadequate when misconduct falls outside the scope of Rule 11 or when the rule is insufficient to address the severity of the misconduct. *See Claiborne v. Puritan Home Funding, L.P.*, 414 F.3d 715, 724 (7th Cir. 2005). Rule 11 can be furthermore inadequate when its safe harbor provision "would fail 'to punish[] a party's dishonesty and deter[] others who might consider similar misconduct." *Xped, LLC*, 690 F. Supp. 3d at 847 (quoting *Sanders*, 25 F.4th at 482) (alterations in original).

First, the severity of Plaintiff's fraud on the court would not be adequately addressed by Rule 11, and the Rule is further inadequate because the safe harbor provision would fail to punish Plaintiff and deter others who might consider similar misconduct. When a litigant's misconduct rises to the level of fraud on the court, "the wielding of [the Court's] inherent power is particularly appropriate[.]" *NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, 124 F.R.D. 120 (W.D. La. 1989), *aff'd* 894 F.2d 696 (5th Cir. 1990) (citing *Universal Oil Products Co. v. Root Ref'g Co.*, 328 U.S. 575, 580 (1946)); *see also Chambers*, 501 U.S. at 51.

12

As detailed above, Plaintiff's misconduct constitutes fraud on the court, and the invocation of the Court's inherent powers is accordingly appropriate. Moreover, Rule 11 would be insufficient in any event because of its safe harbor provision. *Xped, LLC*, 690 F. Supp. 3d at 847. If Rule 11's safe harbor provision were complied with here, Plaintiff would necessarily be given an opportunity to withdraw the falsified letter without issue, but nothing would be done to punish Plaintiff and deter other plaintiffs from similar misconduct. *See id.* The serious nature of falsifying a government document and forging a government official's signature is too egregious to be cured without recourse. *Cf. Whitmore v. Kroger Limited P'ship I*, 779 F. Supp. 3d 757, 766 (E.D. Va. 2024) ("Submitting false or fabricated evidence is the most egregious misconduct which justified a finding of fraud upon the Court.") (quotations omitted).

With respect to Plaintiff's litigation misconduct, Rule 11 is inadequate because the Rule's ambit is limited to papers filed with the court. Fed. R. Civ. P. 11(b); *Chambers*, 501 U.S. at 41. Rule 11 accordingly does not apply to litigation conduct unrelated to papers filed with the court. *E.g.*, *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 245 (1st Cir. 2010) ("The Rule applies only to written papers filed with or submitted to the court, and does not govern the conduct of litigation more generally."). As detailed above, Plaintiff has engaged in a pattern of abusive and harassing litigation conduct which is sanctionable. This conduct does not relate to papers filed with the Court, and Rule 11 is therefore inadequate.

For these reasons, the Court's inherent powers are applicable to Plaintiff's misconduct, and sanctions should issue pursuant to those inherent powers.

### D. Terminating sanctions and an award of attorneys' fees and costs are appropriate to deter future misconduct and punish Plaintiff.

Given the applicability of the Court's inherent powers, the Court should exercise those powers by imposing terminating sanctions and an award of fees and costs. The Court's inherent

powers allow the Court to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44–45. These inherent powers to sanction misconduct exist for two purposes: "punishing a party's dishonesty and deterring others who might consider similar misconduct." *Sanders*, 25 F.4th at 482 (internal quotation omitted). Available sanctions include terminating sanctions (such as dismissal with prejudice) and awards of attorneys' fees and costs. *Xped, LLC*, 690 F. Supp. 3d at 859–60. Both are appropriate here.

Dismissal with prejudice "is an appropriate sanction for lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary." *Sanders v. Melvin*, 25 F.4th 475, 481 (7th Cir. 2022) (quoting *Ayoubi v. Dart*, 640 F. App'x 524, 528–29 (7th Cir. 2016)). Furthermore, "dismissal may 'be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false.'" *Xped, LLC*, 690 F. Supp. 3d at 860 (quoting *Sanders*, 25 F.4th at 481). Both circumstances are warranted here, and accordingly, dismissal with prejudice is appropriate to deter future misbehavior, and especially to punish the serious misconduct here. As detailed above, Plaintiff lied to the Court by falsifying a government document to receive a benefit from that document: curing a legal defect in his Hawaii state law discrimination claims. Plaintiff knew the document was falsified because he created it. (Fain Decl. ¶ 15). No lesser sanction would be appropriate for conduct so egregious, and the Court should dismiss Plaintiff's case with prejudice. *Cf. Xped, LLC*, 690 F. Supp. 3d at 860–61.

Dismissal with prejudice is furthermore appropriate "to penalize and discourage misconduct." *Ramirez v. T & H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). Plaintiffs in employment discrimination cases cannot be permitted to falsify government documents with forged signatures of government officials. This Plaintiff should be held to account for this

14

misconduct, which courts have called "the most egregious," and which should be addressed accordingly. *Whitmore*, 779 F. Supp. 3d at 766. To that end, the Court should dismiss this action with prejudice to penalize Plaintiff and to discourage future litigants from taking similar courses of action.

Attorneys' fees and costs can also be an appropriate sanction to deter future misconduct. *Xped, LLC*, 690 F. Supp. 3d at 859–60. Nonetheless, attorneys' fees "may go no further than to redress the wronged party for losses sustained," and the court "may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017); *see also REXA, Inc. v. Chester*, 42 F.4th 652, 673 (7th Cir. 2022). As previously noted, Adtalem has incurred more than $70,000 in fees and costs resulting from Plaintiff's misconduct in defending this action (Fain Decl. ¶ 39), and here it respectfully asks the Court to award fees and costs and set further briefing on the proper allocation thereof. *Xped, LLC*, 690 F. Supp. 3d at 860.

> **E.** **Briefing deadlines should be stayed pending the resolution of this issue.**

Lastly, Adtalem's deadline to file a reply brief in support of its second Motion to Dismiss is December 23, 2025. (ECF No. 81). While Adtalem is prepared to file its reply brief on time, for purposes of conserving the resources of the parties and of the Court, Adtalem respectfully requests that the briefing schedule be stayed pending the resolution of this Motion and of the serious issues raised herein.

## IV. CONCLUSION

For all these reasons, Adtalem respectfully requests that this Motion be granted in full, that the Court sanction Plaintiff pursuant to its inherent powers by dismissing this action with prejudice and granting an award of fees and costs to Adtalem, and that all pending deadlines be stayed while this issue is before the Court.

Dated:       December 7, 2025
                 Chicago, Illinois

Respectfully submitted,

/s/ *Molly Bruder Fox*

Kelly Eberspecher
**STEPTOE LLP**
227 West Monroe Street, Suite 4700
Chicago, IL 60606
(312) 577-1300
keberspecher@steptoe.com

Molly Bruder Fox (*pro hac vice*)
B. Gammon Fain (*pro hac vice*)
**STEPTOE LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
mbfox@steptoe.com
gfain@steptoe.com

*Counsel for Defendant*
*Adtalem Global Education, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2025, I caused the preceding to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to all parties and counsel of record.

/s/ *Molly Bruder Fox*

Molly Bruder Fox

17